## SMITH et al. v. BUSH et al.

No. 22392.    March 26, 1935.

Rehearing Denied May 28, 1935.

Application for Leave to File Second Petition for Rehearing Denied July 9, 1935.

N. E. McNeill and Rowland & Talbott, for plaintiffs in error.

Glenn O. Young and William E. McQuerry, for defendants in error.

Miley, Hoffman, Williams, France & Johnson and Hayes, Richardson, Shartel, Gillilland & Jordan, amici curiae.

BUSBY, J. This action to obtain a money judgment on a note and to foreclose a real estate mortgage was commenced in the district court of Creek county on August 18, 1930, by Alden Marland Bush, as plaintiff. Orlando Walking and his wife, Laverna B. Walking, who were the makers of the note and mortgage, and Glenn J. Smith, Jeanette E. Cook, and John B. Grieves, who had acquired interests in the property from the mortgagors subsequent to the mortgage, were named in the petition as parties defendant.

The case was tried piecemeal in the court below without the intervention of a jury. The plaintiff first obtained a judgment against Orlando Walking and his wife for the amount due on the note and decreeing a sale of the mortgaged property. No appeal has been perfected as to this judgment, or part of judgment. This first judgment, or portion of judgment, is not said to affect the interests of defendants Smith, Cook, and Grieves, who apparently had not been served with summons at the time it was rendered. These defendants were later brought into court and the issues between them and the plaintiff were made up by appropriate pleadings. After the issues had been joined the cause was tried to the court as to the last-named defendants and resulted in a judgment declaring the debt due the plaintiff from the mortgagors to be a lien against their interests in the mortgaged property and decreeing that the same be sold to satisfy the debt.

The three defendants last above named have brought the case to this court on appeal. They appear herein as plaintiffs in error. Alden Marland Bush, plaintiff below, and E. R. Unger, who was appointed receiver in the trial court, are defendants in error. The parties will be referred to in this opinion as they appeared in the trial court when not otherwise designated; the term "defendants," however, will be used to include only those defendants who have appealed, and Orlando Walking and his wife will be referred to in this opinion as mortgagors.

The defendants contended in the trial court and now urge in this court that the plaintiff's right to foreclose his mortgage as to their interests is barred by the statute of limitations. This contention is based upon the following facts as developed at the trial:

The note and mortgage given to secure the same were executed by the mortgagors to one Alden S. Bush, mortgagee, on December 20, 1919. The note was for $5,000 with interest, and the maturity date of the note was January 1, 1925. The mortgage covered land situated in Creek county which was then owned by the mortgagors. The mortgage was filed for record on January 19, 1920, and subsequent purchasers of interests in the property were thereafter charged with constructive notice thereof. Section 11262, O. S. 1931. Subsequent to the date the mortgage was recorded, but prior to the due date of the note secured thereby, the defendants herein acquired their respective interests in the property. John B. Grieves acquired an oil and gas lease on the property on August 29, 1921. Glenn J. Smith acquired three-eighths interest in the oil and gas and mineral rights in place on the property on February 7, 1924. On the same date, Jeanette E. Cook obtained a one-eighth interest in the oil, gas, and minerals in place. Neither of these defendants ever assumed the payment or paid any part of the principal or interest on the debt secured by the mortgage, nor did either of them acknowledge or promise to pay the debt in writing. More than five years elapsed after the due date of the original note before this action was brought. On January 2, 1925, the day after the maturity date of the note, the mortgagor and mortgagees entered into an extension agreement, whereby the time for paymenet of the note secured by the mortgage was extended for five years. After

this extension agreement had been executed and on February 10, 1925, the mortgagee assigned the note, mortgage, and extension agreement to the plaintiff in this action. Thereafter the mortgagors continued to pay interest on the indebtedness until and including 1929.

Unquestionably, the execution of the extension agreement and the subsequent interest payments made by the mortgagors kept the debt alive as to them and as to the interest in the mortgaged premises still owned by them at the time this action was brought. The defendants say, however, that since they were not parties to the extension agreement and did not make any of the subsequent interest payments, their interests in the mortgaged premises should not be affected thereby. They say that since more than five years have elapsed since the note became due, they are entitled to avail themselves of the statute of limitations to prevent a foreclosure and sale of their respective interests, notwithstanding the fact that the right of action as to the mortgagors is not barred by the statute.

The provisions of the statute relating to this action are of paramount importance in considering the problem involved. Section 10955, O. S. 1931, provides:

"A lien is to be deemed accessory to the act for the performance of which it is a security, whether any person is bound for such performance or not, and is extinguishable in like manner with any other accessory obligation."

Thus in this jurisdiction a mortgage on real estate is considered an incident to the debt secured thereby. Mamie H. Clark et al. v. W. W. Grant, 26 Okla. 398, 109 P. 234; Foster v. Augustanna College & Theological Seminary, 92 Okla. 96, 218 P. 335.

Section 10957, O. S. 1931, provides:

"A lien is extinguished by the mere lapse of the time within which, under the provisions of civil procedure, an action can be brought upon the principal obligation."

Since the mortgage is an incident to the debt secured thereby and the mortgage lien is extinguished by the lapse of time within which an action may be brought upon the principal obligation, it is important to determine the time within which such an action must be brought.

Section 98, O. S. 1931, provides:

"Civil actions can only be commenced within the periods prescribed in this article, after the cause of action shall have accrued; but, where, in special cases, a different limitation is prescribed by statute, the action shall be governed by such limitation."

Section 101, O. S. 1931, provides, in part, as follows:

"Section 101. Limitation of actions (1) on written contract, five years. * * *

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued and not afterwards:

"First: Within five years: An action upon any contract, agreement or promise in writing. * * *"

Thus an action on the note involved in this case would, in the absence of other circumstances, have to be brought within five years from the due date thereof. However, if the person to be charged on such note acknowledges the existing liability or promises to pay the same in writing or pays any part of the principal or interest, the statute of limitations does not bar an action until five years from the date of such acknowledgment, promise, or part payment. This by virtue of section 107, O. S. 1931, which provides:

"In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

The extension agreement made in this case constituted both a promise to pay the debt and an acknowledgment of the existence of the same. However, this acknowledgment and promise was made on January 2, 1925, and was more than five years prior to the commencement of this action. If this extension agreement were the only thing relied upon by the plaintiff to prevent the statute of limitations from barring his action as to the defendants in this case, we would have an entirely different problem than the one with which we are now confronted. The subsequent interest payments made by the mortgagors to the plaintiff less than five years before commencement of the action places the plaintiff in a much more favorable position. The precise question involved in this case may be stated in the following language: Will the payment of interest on a mortgage debt by a mortgagor (who still retains an interest in the mortgaged premises) after the debt be-

comes due and before the expiration of five years from the due date, prevent the statute of limitations from barring a foreclosure of the mortgage against portions of or interests in the mortgaged property acquired by third persons after the mortgage was recorded, until five years after such interest payment was made?

The question seems to be one of first impression in this jurisdiction. Although expressions appear in the previous decisions of this court which, taken literally, shed some light on the problem presented, the cases in which such expressions appear are distinguishable by reason of the facts involved and cannot be said to settle the issue. See Clark v. Grant, supra.

Two distinct and opposing lines of authority have developed in other jurisdictions. Utah, Kentucky, North Dakota, California, and Arkansas approve the view that the statute of limitations is available as a defense to the subsequent incumbrancers or purchasers of interests in mortgaged premises, notwithstanding the subsequent payment, acknowledgment, or promise by the mortgagors or debtors. Boucofski v. Jacobsen, 36 Utah, 165, 104 P. 117; Tate v. Hawkins, 81 Ky. 577, 50 Am. Rep. 181; Kendall v. Clark (Ky.) 13 S. W. 583; Colonial & U. S. Mtg. Co. v. Northwest Thresher Co. (N. D.) 103 N. W. 915; Filippini v. Trobock (Cal.) 66 P. 587; Benedict v. Griffin (Ark.) 122 S. W. 479.

We do not deem it necessary to engage in an exhaustive discussion of the reasoning upon which the result announced in the above cases is based. The general theory running throughout is that the person who acquires an interest in mortgaged premises subsequent to the mortgage may rightfully assume that the obligation secured by the mortgage will not be enlarged; that a partial payment, acknowledgment, or promise by the mortgagor, if it delayed the operation of the statute of limitations as to the subsequent purchasers or incumbrancers, would amount to such an enlargement of the prior mortgage obligation without their consent, and would therefore be inequitable.

The opposite view has been announced in Kansas, Arizona, Iowa, Maryland, Texas, Nebraska, New York, Minnesota, Mississippi, Vermont, Oregon, and by the Supreme Court of the United States. Waterson v. Kirkwood, 17 Kan. 9; Consolidated Nat. Bank v. Van Slyke (Ariz.) 234 P. 553; Kerndt v. Porterfield, 56 Iowa, 412, 9 N. W. 322; Buchanan v. Lloyd, 88 Md. 642, 41 Atl. 1075;

Johnson v. Lasker Real Estate Ass'n, 2 Tex. Civ. App. 494, 21 S. W. 961; McLaughlin v. Senne, 78 Neb. 631, 111 N. W. 377; Whittacre v. Fuller, 5 Minn. 508 (Gil., 401); Bowmar v. Peine, 64 Miss. 99, 8 So. 166; Hollister v. York, 59 Vt. 1, 9 Atl. 2; Murdock v. Waterman, 145 N. Y. 55, 59 N. E. 829, 27 L. R. A. 418; New York Life Ins. & Trust Co. v. Covert, 6 Abb. Prac. (N. S.) 154; Id., 3 Abb. Ct. App. Dec. 350; Kendall v. Tracy, 64 Vt. 522, 24 Atl. 1118; Kaiser v. Idleman, 57 Ore. 224, 108 P. 193, 28 L. R. A. (N. S.) 169; Hughes et al. v. Edwards, 9 Wheat. 488, 22 L. Ed. 142. See, also, Jones on Mortgages (8th Ed.) page 1038, par. 1540.

These cases proceed upon the theory that a subsequent purchaser or incumbrancer of an interest in mortgaged premises, with notice actual or constructive of the mortgage, takes his interest subject to the terms of the mortgage contract and the law applicable thereto; that the mortgage is an incident to the debt; that as a matter of law the period of computation of the statute of limitations may be delayed by a payment on the debt, or by a written acknowledgment of, or promise to pay, the same. The additional burden occasioned by the delay, if any, must be taken to have been within the contemplation of the purchaser by reason of the nature of the contract and the law governing the rights of the parties thereto. It is said that, "while the statute of limitations is a legitimate defense, it is not one of right, but of repose, and is not to be intended beyond its plain terms." Consolidated Nat. Bank v. Van Slyke, supra. It is persuasive in this case to note that the sections of our statute governing this question (secs. 98, 101, and 107, O. S. 1931) were adopted from the state of Kansas, which, as we have seen, is committed to the view last above stated.

The only parties to be charged with the payment of the debt in this case were the mortgagors. The payment of interest by them satisfied the requirements of the statute (sec. 107, supra) and prolonged the period within which the action could be brought. The defendants herein are not personally liable. They are not the parties to be charged. They merely own an interest in the **property to be charged.**

After a careful consideration of the above statutory provisions viewed in the light of the exhaustive reasoning contained in the cases previously cited in this opinion, we conclude that the view last above expressed is the better view. We accordingly hold in

this case that the statute of limitation is not available to the defendants herein for the reason that within five years previous to the commencement of this action, interest payments have been made by the mortgagors, who are the debtors on the note secured by the mortgage and who still own an interest in the mortgaged premises.

The judgment of the trial court, so far as it determines that the respective interests of the defendants, Grieves, Smith, and Cook, were subject to the lien of the mortgage, is therefore affirmed.

We next direct our attention to a discrepancy between the two judgments rendered in the court below in determining the amount due on the debt. In the first judgment rendered, when the mortgagors alone were before the court as parties defendant, no credit was given for interest payments after the first day of January, 1925, and the court found the amount due to be the principal of the note with interest from January 1, 1925, and attorney's fee. This judgment was not binding on the defendants who appear in this court as plaintiffs in error. In the second judgment, the defendants say in their brief that proper credit was not given for interest paid. Plaintiff does not challenge this statement, and an examination of the record supports the same. We shall not undertake the detail of calculating the precise amount due as interest. Since the judgment must be modified in another respect, we direct the trial court to review its determination of the amount due on the note and correct its judgment accordingly.

The next question involved in this appeal concerns only the defendant John B. Grieves. As we have previously stated, he acquired an oil and gas lease on the premises. During the exploratory period of the lease he entered upon the premises, drilled for oil and gas, and commenced the production of oil thereon, and, at the time this case was tried, oil was still being produced upon the premises. In order to accomplish this production he moved upon the premises certain articles of personal property, some of which became annexed to the realty. These articles consisted of casing installed in the oil well, as well as other articles less permanently annexed to the real estate.

The oil and gas lease under which he entered upon the premises provided, in part, as follows:

"Lessee shall have the right at any time to remove all machinery and fixtures placed on the premises, including the right to draw and remove casing."

The mortgagee was not a party to this lease. The trial court held that all of the oil and gas mining equipment placed on the land by Grieves and used by him in operating for and producing oil and gas were subject to the lien of the mortgage, on the theory that since the mortgagee was not a party to the lease he was not bound by the removal clause therein contained. This view of the law seems to be supported by authorities in some states. See Meagher v. Hayes, 152 Mass. 228, 25 N. E. 105. The better and more equitable rule, however, is that when the mortgagor of land leases it to a third person and gives the third person the right to remove from the premises any chattels that he may attach, such chattels are not subject to the mortgage, **if they can be removed without injury to the property.** See Equitable Guaranty & Trust Co. v. Hukill, 10 Del. (Chan.) 88, 85 Atl. 60; Payne v. McDowell, 71 Vt. 28, 41 Atl. 1042; Roberts v. Caple, 8 Ala. App. 444, 62 So. 343; Shelton v. Piner (Tex. Civ. App.) 126 S. W. 65. See, also, note in 41 A. L. R. at page 616. The general principle involved was previously approved by this court in the case of Murray Co. v. Chickasha Cotton Oil Co. et al., 73 Okla. 106. 174 P. 1091. In the syllabus in that case we said:

"Where ginning machinery is sold under agreement between the vendor and vendee that the vendee give notes in payment thereof secured by chattel mortgage on said machinery, and that said machinery shall not be annexed to or become a part of any realty until the purchase price is fully paid, and the notes and mortgage are executed and delivered, and the vendee places the machinery in a cotton gin on the premises, which is covered by a real estate mortgage, and the evidence shows that the machinery **may be removed from the premises without injury to the same,** the holder of the chattel mortgage does not lose his lien on the machinery as security for the payment of the purchase price." (Emphasis ours.)

Thus in this case defendant Grieves should be permitted to remove such portions of his personal property placed upon the premises as may be removed without injury to the realty. It is a question of fact to be determined by the trial court as to whether the various items of personal property such as the casing in the wells can be removed without injury to the wells or other portions of the real property. The question of whether these various articles of personal property should remain on the premises and be subject to the mortgage lien of plaintiff depends upon the decision on this question

of fact. The trial court is therefore directed to ascertain from the evidence already introduced and from such other evidence as may be necessary to determine the facts what portions of the personal property placed upon the premises by Grieves may be removed without injury to the realty and modify the judgment to permit the removal thereof. In connection with the items of property which cannot be removed without injury to the realty, the defendant Grieves urges that the plaintiff should be compelled to pay him the reasonable value thereof. Some cases are cited in the brief in support of this contention. An examination of those cases, however, discloses that none of them involve a situation similar to the one presented in the case at bar. We find no case among those cited which authorizes a person who has entered upon mortgaged premises without an agreement with the mortgagees and annexed to the realty items of personal property which cannot be removed therefrom without injury thereto, to compel the mortgagee on foreclosure of his mortgage to pay the reasonable value of the property permanently annexed to the realty. We decline to place the stamp of judicial approval upon this contention of the defendant Grieves.

The next question to be considered relates to an accounting by the receiver, E. R. Unger, who appears herein as defendant in error. It appears that this receiver was appointed shortly after the first judgment was rendered in the trial court and that he has been receiving rentals from the property and the proceeds of production of oil and gas on the property. We cannot perceive how the trial court would have any difficulty in distributing the money in the hands of the receiver after having determined the rights of the parties in accordance with the views previously expressed in this opinion. We deem it unnecessary, therefore, to enter into any lengthy discussion as to how the money received by the receiver shall be distributed. It is proper to mention, however, in this connection, that it appears from the briefs that, although the receiver has been receiving the proceeds derived from the sale of oil, the defendant Grieves has been paying the operating expenses. Grieves should be reimbursed from the proceeds derived from the production of oil for all reasonable and necessary expenses incurred by him in operating the lease during the period of receivership.

This case is remanded to the trial court with directions to modify its judgment in accord with the views herein expressed.

OSBORN, V. C. J., and RILEY, WELCH, PHELPS, and CORN, JJ., concur. BAYLESS and GIBSON, JJ., dissent. McNEILL, C. J., disqualified.